The opinion of the court was delivered by
Breaux, J.
This is an action brought to annul the judgment rendered in June, 1898, by the Oivil District Court for the Parish of Orleans, recognizing Rev. P. S. O’Neil, Mrs. Mary O’Neil, widow of Bryan J. Berkery, and Rosanna Bridget-O’Neil, widow of Patrick A. Einney, as the sole heirs of the late Thomas O’Neil and Bridget O’Neil, his wife, and placing them in possession, and to have plaintiff in the action, Mrs. Mary Ann Jacobs, recognized as heir to one-fourth of the estate, and placed in possession to that extent. Thomas O’Neil, Sr., died in 1897, his wife dying prior to that time. The late Thomas O’Neil, Jr., was from Tullow, County of Carlow, Ireland, where he was born in December, 1840. While still in Ireland, Thomas O’Neil, Sr., was married to Bridget O’Toole, and the following named children are issue of that marriage, Peter S. O’Neil, who was born to them in 1842, Mary O’Neil, in 1846, and Bridget O’Neil, in 1848. He came to this country in 1850, and his family followed him in the year 1851. The family consisted of Thomas O’Neil, Jr., and the other before named children.
Petitioner avers that her father, Thomas O’Neil, Jr., was the eldest son of Thomas O’Neil, Sr., and Bridget O’Toole, his wife, leaving her, his only child, and that as the grandchild of Thomas O’Neil, Sr., and his wife, Bridget O’Toole, she is entitled to one-fourth of their estate with her co-heirs, the parties before named.
The testimony shows that Thomas O’Neil, Jr., was always known by that name, and that he was always regarded as the child of Thomas O’Neil, Sr., and Bridget O’Toole, and treated as such; that he was sent to school by his reputed father, Thomas O’Neil, Sr., and given as good an education as he was capable of receiving; that he made provision for his maintenance and settlement in life; that he was known as his son, and in the family he was treated as a brother by the other children. When Thomas O’Neil, Jr., was married to plaintiff’s mother, in St. Louis, Mo., he claimed Thomas O’Neil, Sr., and Bridget O’Toole as father and mother, and of this fact a note is inserted in the certificate of marriage.
Upon this state of facts, of which the foregoing is an outline, plaintiff avers that she has shown that she is the grandchild of Thomas O’Neil, *1756 Sr., and Bridget O’Toole, and that, as such, she is entitled to be recognized and to inherit.
On the other hand, a witness for the defendant, a resident of this city, who had known the O’Neil family in Ireland, testified that £» Captain Carter was pointed1 out as the father of the child in the town in which he was born. This witness came to' this country many years ago. She said, in substance, that, as a friend of the family, she did not wish to reveal the fact that Thomas O’Neil, Jr., was not'the son of Thomas O’Neil, Sr., and his wife; that the family of O’Neil cared for him as if he had been their child, and that thqy did not wish to divulge the fact that Thomas O’Neil, Jr., was the illegitimate offspring of a natural father, and of a mother, who had deserted him.
In 1886 plaintiff sued Thomas O’Neil, Sr., for a large amount, and alleged in her petition in that suit that she’was the grandchild of the late Thomas O’Neil, Sr. The latter, as a witness in his own behalf, when questioned in that case emphatically denied all paternity of Thomas O’Neil, Jr., and swore that he was not legitimately or illegitimately related to him; that the child was left at his father’s house* and, when he was married to Bridget O’Toole, he took the child with him and helped him all he could. In the case decided in 1886, Mrs. Berkery, a daughtt / of 'Thomas O’Neil, Sr., testified that she was not related to Thos. O’Neil, Jr.; that he was two years old when her father was married to her mother; that when she came to this country to join her father, he was brought along with the other children, and no distinction was ever made between him and the other children; that the good relations continued between them until he died. Another daughter testified in that suit that they always understood that he was not a brother, though they had always treated him as a brother. The first suit, that is the one 'brought in 1886, in which the present plaintiff was plaintiff claiming a large amount alleged to be the proceeds of the firm of Thos. O’Neil & Son, was decided against plaintiff and in favor of Thos. O’Neil, Sr.
It appears by the testimony of these witnesses (Mrs. Einley, Mrs. Berkery and Mrs. Estelle, who were also witnesses in the case decided in 1886) in the ease before us for decision, that Thomas O’Neil, Jr., knew that lie was not the son of Thomas O’Neil, Sr., and that on certain occasions he had regretfully mentioned the fact. The evidence in the pending case discloses that O’Neil, Sr., was honorable and truthful; *1757 that his conduct was kindly, and that he had charitably cared for another boy and reared him, however, as to this case, not giving him his own name.
In addition to the evidence given in the first suit, in 1886, there is other evidence of record in the case here such as that he ¡paid the funeral expenses of the late Thomas O’Neil, Jr., and performed other kindly offices for him; that he supported the child and the widow of his marriage, which child was received at O’Neil, Sr.’s house, and treated and looked upon by him as her grandfather.
The judge of the District Court held in the present case, from the facts disclosed, that Thomas O’Neil, Jr., was not the son of Thomas O’Neil, Sr., and Bridget O’Toole; that he was taken by the former, in all probability, out of Christian charity, and, in order not to humiliate him, he gave the boy his own name as a protection. Erom the judgment, rejecting plaintiff’s demand, the plaintiff prosecutes this appeal.
The testimony does not show a register of the birth or baptism of Thomas O’Neil, Jr. The law reads: “It suffices for the child to show that he had been constantly considered as a child bom during marriage.” C. C., 194. That he has been so held is shown. The acts and utterances of all the members of the family held him up to the community in which he had lived as his son. We have before noted in our statement of the facts the extent of the kindness of O’Neil, Sr., to the plaintiff’s father. It would not have been possible for him to have done more for one of his own children. Such kindness and consideration is not usual. These facts of themselves would be sufficient to prove legitimate filiation, if they were not refuted by positive and direct testimony. But in this case the testimony shows, beyond all question, that Thomas O’Neil, Sr., was honest and truthful. Every witness who had anything to say upon the subject was quite pronounced in the statement that he was entirely upright. During many years he worked at an honorable trade, that of builder, accumulated property and was considered a man of good character. This is admitted by plaintiff, who asserts, however, that the old man, O’Neil, Sr., became embittered against her mother because, some time after the death of her father (O’Neil, Jr.), her mother chose to become the wife of one whom O’Neil, Sr., disliked.
We have noted in our statement of the facts of the case that, in 1886, plaintiff, as sole surviving child of Thomas O’Neil, Jr., who died many years before, brought suit against Thomas O’Neil, Sr., for amounts *1758 which she charged had been collected by the latter for O’Neil, Jr., and kept by him. The two, the father and the reputed son, worked as partners in the erection of buildings, and held themselves out to the world as the firm of Thomas O’Neil & Son. This gave some basis for the suit in 1886, which plaintiff asserts caused additional anger on the part of Thomas O’Neil, Sr.
Defendant in that suit was put on the stand and his testimony does not disclose that he was angered by it. He, as a witness, in answer to questions of counsel, positively denied that he was the father of plaintiff’s father, or that he was related to him (O’Neil, Jr.,) in any way. The questions of counsel on the subject were very few. There is nothing in the questions and answers denoting surprise of any sort on the part of any one, nor did the witness testify as one-seeking to conceal anything. The following is the testimony:
Q. Was Thomas O’Neil, Jr., your son?
A. No.
Q. Was he any relation of yours?
A. No.
Q. Plow did he come to be with you ?
A. He was left at my father’s house, and when I got married I took him with me.
Q. Where was your father’s house ?
A. In County Carlow, Ireland.
Q. Was he any relation of yours, legitimately or illegitimately?
A. - No, six.
Q. You brought him here and raised him?
A. I brought him here as a child. My intention was to help him if I could.
This testimony, as we have already noted, was corroborated by an old friend of the family, Mrs. Estelle, who knew the boy in Ireland and afterwards in this city. We have seen that it is also corroborated by the daughters of Thomas O’Neil, Sr. In the suit now before us, these daughters, a son, and the friend of the family just referred to, testified corroborating the testimony of the late Thomas O’Neil, Sr., in the first suit. During the intervening years, from 1886, the year the first suit was decided, to November, 1898, when the suit here was tried, nothing, we taire it, was done by plaintiff toward securing copies of the certificate of her *1759 father’s birth, or any evidence directly contradicting the testimony of the witnesses, Mrs. Estelle and others for the defendant. She, Mrs. Jacobs, plaintiff, knew the birth place of her father. It was disclosed in the first suit. Presumably, there are living witnesses or traditions of some kind and, it may be, entries in the church records showing- his, O’Neil, Jr.’s., parentage, especially if he was the son of Thomas- O’Neil, Sr.
Plaintiff, after the death of Thomas O’Neil, Sr., instead of seeking other evidence, based her suit solely upon the fact that Thomas O’Neil, Jr., was treated and considered as his son, as made quite manifest in the first suit. Thomas O’Neil, Jr., unquestionably exercised all the rights and privileges of a son and unquestionably the relationship between the parties, to all intents and purposes was the same as usually exist between father and son. Every act and utterance gives rise to the implication of respect and love for plaintiff’s father on the part of Thomas O’Neil, Sr. If all this stood alone and uncontradicted, it would be more than enough to sustain plaintiff’s demand. But, with the other uncontradicted testimony before us, we must decline to believe that one who had the character which O’Neil, Sr., had, would have gone so far as to deny his first born, because, a considerable time after his death, his widow chose to marry against his wishes, one whom he disliked (a reason given by one of the witnesses as the cause for the beginning of Thomas O’Neil, Sr.’s anger). The plaintiff, as a witness, said the cause was that the second husband indulged too freely in strong drinks. Judging from the name of the second husband, O’Donohoe, it may well be inferred that she, Widow O’Neil, Jr., did not marry out of the nationality of the asserted father of her first husband. This marriage could not have given cause for casting off a son, nor do we think that the suit instituted by the plaintiff against him (Thomas O’Neil, Sr.,) in 1886, for an accounting, prompted him to seek to repudiate his own blood and commit one of the worst of crimes. The child, O’Neil, Jr., grew to manhood with the family of his benefactor, O’Neil, Sr. In his early youth he was the school-mate of his real son, now the Rev. Peter O’Neil, and in his early manhood he, O’Neil, Jr., became a builder under the direction of his reputed father. They became partners under the firm name of Thomas O’Neil & Son. Together they made their estimates and drew their plans *1760 of buildings which they contracted to build. O’Neil, Sr., and his wife went further than is usual in such cases and gave to him, O’Neil, Jr., their name and sought thereby to protect him from a reproach for which he was not responsible. As .they entertained great regard for him, it was, after all, hut natural. He was always spoken of as a son and brother, except when, in a suit at plaintiff’s instance, brought for a large amount, the direct question was propounded to the reputed father, under oath, and it became necessary to prove that he was not a son. The sympathy of the reputed father and the remaining members of the family was very great and extraordinary, and yet it does not seem entirely impossible.
We do not find that the judge of the District Court erred.
For these reasons, the judgment is affirmed at appellant’s costs.
Rehearing refused.